### MOUAT ET AL., APPELLANTS, v. WOOD, APPELLEE.

1. EVIDENCE.
In an action against a commission company for the value of goods consigned to and converted by it, an inventory of plaintiffs' goods furnished by defendant's manager before the conversion, is competent evidence to prove the amount of such goods in its hands at the date of the inventory.

2. PRACTICE—GROUNDS OF OBJECTION.
An objection to the introduction of a paper in evidence on the ground that it is immaterial and incompetent, raises no question as to the sufficiency of its authentication.

3. APPELLATE PRACTICE.
When there is sufficient evidence in the record to warrant the verdict, without that which was admitted over objection, an appellate court is not required to determine whether error intervened in overruling the objection.

4. BURDEN OF PROOF.

In such a case, where the proof is within the knowledge and control of the wrongdoer, the burden is on him to reduce the recovery by showing the extent of his wrong.

*Appeal from the District Court of Arapahoe County.*

Mr. R. H. GILMORE and Messrs. DOUD & FOWLER, for appellants.

Messrs. STUART BROS. & ANDREWS, and Mr. C. P. EVANS, for appellee.

BISSELL, P. J., delivered the opinion of the court.

This record presents but one question. It is based solely on the alleged error of the court in admitting certain testimony tending to support the plaintiff's recovery.

During the year 1890, Thomas Wood was a wholesale dealer in teas, coffees and spices, doing business under the name of Thomas Wood & Company in the city of Boston. In the early part of the year, W. S. Spencer had been his representative in Colorado, under an arrangement which authorized him to solicit and receive orders for the goods dealt in by Wood & Company, which were filled by that concern when the transaction proved satisfactory. During the time Spencer was acting as Wood's agent, he had stored the goods with the J. M. Clark Commission Company. In July, Spencer entered the grocery department of this company, and notified Wood of the change in his business, and recommended that house as his successor for the sale and distribution of the goods handled by Mr. Wood. In the letters from Spencer, there was some change suggested in the terms of the agency; but these simply concerned the question of storage, which need not be otherwise referred to. Later in the negotiations, before the arrangement with the Commission Company was completed, Spencer wrote several letters to Thomas Wood & Company on behalf of the commission

house. After this transfer of agency, the transactions between the two concerns were somewhat numerous, goods were shipped and sold, remittances made, commissions allowed, and the business between the houses was carried on in the usual way. On the first of December, the commission house wrote a letter to Wood & Co. of Boston, and inclosed an inventory or statement of the goods on hand and unsold at that date. The letter was written on behalf of the company by Mr. Spencer, and was signed at the end by J. M. Clark as manager, apparently to authenticate it. This letter is one of the principal subjects of objection, and it will be referred to again. The company became embarrassed later, and on the 23d or the 24th day of January sold in a lump all the goods which they had in their place to John Martin for the sum of eight thousand dollars. The price was not paid in cash; but Martin gave his notes for the consideration. These notes were turned over to the North Denver Bank, and when they were collected the proceeds were applied *pro tanto* to the satisfaction of an indebtedness of about twenty-five thousand dollars, which the commission company owed the bank. No reference will be made to the connection of the appellants, Mouat and Goss, with the transaction, further than to say that they were directors of the company and made the sale to Martin, and it is conceded by counsel that their connection with the transaction was such that they were liable to Wood & Company for the value of so much of the goods as could be traced to this sale, and be shown to have been transferred to Martin. On the 27th of January, the concern made an assignment to Mr. Martin, and he went into possession of the remnant, which only consisted of counters and cases and the other paraphernalia of a commission house. It was in evidence that some direction had been received by the Commission Company from Wood to re-ship his goods, so far as they were unsold, via Galveston to Boston. After the receipt of this order, the company boxed and crated all, or a portion of them, and marked them with the address of Thomas Wood & Co., Boston, via the Morgan

Line Steamers, Galveston. This is stated simply for the purpose of showing that it came to the knowledge of the defendants, as well as to the knowledge of the purchaser, that the goods were not the property of the Commission Company, but that title was in the original vendor, Wood & Co., of Boston. The transactions between Wood & Co. and the Clark Commission Company from the first of December to the time of their assignment were shown by Wood himself, who was on the stand, and the debits and credits of the account reduced the claim, so that, if the recovery were based on the amount and value expressed in the inventory, the judgment would be about twenty-nine hundred dollars, and this was the verdict of the jury. In support of his contention that the inventory was correct, Wood produced on the trial and offered in evidence transcripts of his books. These transcripts were enormously large exhibits and covered a multitude of transactions. The items of the sales were very small, the packages numerous, and the entries consequently very extensive. The appellants objected to this proof, and now insist that the books themselves were the only legitimate testimony which could be offered in support of the inventory.

This somewhat lengthy statement serves to emphasize the only question on which counsel insist. It is conceded that, to the extent of some sixteen hundred and odd dollars, the verdict is just and the plaintiffs entitled to recover. It is their contention, however, that as to the balance of the judgment it ought to be reversed, because there is not sufficient competent testimony to support it. The appellants further insist that, even though there was competent testimony offered, which might possibly support the finding, the error which the court committed in permitting the introduction of exhibits " L " and " M " ought to reverse the case, since it cannot be determined on what basis the jury rendered their verdict. We cannot agree with counsel in any of their positions. We are clearly of the opinion that the inventory of December 1, 1890, was sufficiently authenticated to make it

competent testimony against the defendants, and that their objection to its introduction was neither aptly expressed nor properly taken to support their position. It is very clear that the evidence demonstrated that J. M. Clark was the manager of the Commission Company. It was likewise well established that Wood & Company's antecedent agent, Spencer, had entered the employ of the commission house, and on its behalf transacted business with the wholesale dealer in Boston. The letters and communications between Wood & Co. and the J. M. Clark Commission Company were sufficiently proven and identified to entitle them to be offered, and the general objection that these letters were immaterial and irrelevant was not enough to exclude them from the consideration of the jury. When the letter was offered which contained the inventory of December 1st, purporting to be signed by the J. M. Clark Commission Company, through its agent Spencer, and verified by the signature of J. M. Clark, the manager of the company, it was sufficiently identified under the testimony to entitle it to be offered in evidence when the only objection to its introduction was based upon its immateriality and irrelevancy. It is difficult to conceive of any better proof of the quantity of goods in the possession of a house than the inventory furnished by its manager to the vendor of the property. It is insisted on this appeal that there was no proof that J. M. Clark was the manager of the company, or that the signature is Clark's. We deem it well established by the evidence that Clark was the direct head and business manager of the Commission Company, and possessed of full authority to manage its concerns to such an extent that any transaction entered into between him and a third party would bind that corporation. Since this is established, it follows that the inventory was competent evidence, unless it was essential to prove Clark's signature to the paper produced. If the genuineness of the autograph were questioned, the contention might be well based. No such objection was offered, and it was simply contended that the inventory was immaterial and incompetent for the purpose for which it was offer-

ed, to wit: to show what goods the Commission Company had received from Wood and had on hand at the date specified. We conceive it to be entirely competent and exceedingly satisfactory proof, and that the objection now insisted upon is entirely unavailable. As we have already stated, the plaintiffs attempted to support this proof by the production of the exhibits "L" and "M," which were transcripts of Wood's books, showing the shipment of the goods. It is insisted by the appellants that these exhibits were not admissible, and that the books themselves were the only evidence which the plaintiff had a right to offer in support of his complaint. It may be conceded that this is a debatable question, and one perhaps not satisfactorily settled by the authorities. This arises principally from the fact that the record does not disclose whether this case was brought within the rule laid down in 1 Greenleaf on Evidence, sec. 93, which permits the compilations to be offered where they are the result of voluminous facts, or the inspection of many books and papers which could not be conveniently examined in court. In a case like the present, where a foreign vendor brings his action to recover from a commission company the value of goods which they have received and admit to have converted, the rule concerning the production of books ought to be so far relaxed as to permit fairly verified compilations wherever the accounts and the books are numerous, and the expense and inconvenience attending their production so great as to furnish very cogent reasons for the application of the rule. We do not decide that precise question here, since we find in the record sufficient testimony to support the verdict regardless of this proof. It is impossible to see that the introduction of these exhibits, if they could not be legitimately received under the rule, operated to the prejudice of the appellants to the extent which authorizes them to insist on a reversal of the judgment. Without them, there is enough in the record to warrant the verdict, and it cannot be disturbed on this account. It transpired during the trial that these goods which the Commission Company held for disposition were included

in the sale to Martin, and that the Commission Company and the vendee, Martin, as well as these appellants, well knew that the goods were held by the company for sale on commission, and that the company had no title to them otherwise. It was likewise shown that the purchase price was devoted to the liquidation of the debts of the company, and it is consequently very properly conceded by counsel that Wood & Co. were entitled to recover from the appellants the value of the goods which they thus transferred. The proofs furnished by the inventory and the history of the subsequent transactions, as testified to by Mr. Wood, established the liability to be substantially as found by the jury. The defendants, however, offered evidence which tended to show that some of the cans and packages which were turned over by the company to Martin had been broken, and some of the contents disposed of prior to their transfer. The appellants now insist that it is incumbent on the plaintiffs to show just how much went into the hands of Martin by reason of this sale, and that without such proof his right to recover cannot be measured by the inventory as modified by the proof of the subsequent transactions between the parties. We do not so think. When it is conceded, as it must be, that the goods mentioned in the inventory were shipped to the commission house, and that those goods, in so far as the evidence was obtainable by the vendor, were sold by the company to Martin, the measure of the recovery must undoubtedly be the value of these goods, subject of course to any reduction which the defendants may establish. The burden of showing the diminution in value was with the defendants. The case seems to come very fairly within the principle laid down in the well considered opinion of Mr. Commissioner Macon in the case of the *Little Pittsburgh Consolidated Mining Co.*, 11 Colo. 223. This case clearly holds that where the proof is within the knowledge and control of the wrongdoer, the burden is on him to reduce the recovery by showing the extent of his own wrong. One of the appellants, Goss, testified that he was president of the company, and knew that a large portion of these goods which

were sold by the company to Martin were held by the J. M. Clark Commission Company to be sold on commission, and that that concern had no title to that property. He testifies that he was advised that the goods of Wood & Co. of Boston were included in the sale, and he knew that those goods which had been packed for trans-shipment to Boston were delivered to Martin, and that the company, of which he was the president, got the proceeds of the sale. Under these circumstances, it is no breach of any well settled rule of evidence or of law which permits the vendor to recover the full value of all the goods which he could trace into the hands of the commission house, and to recover upon the basis that the packages were unbroken and full, unless that house by satisfactory and competent proof showed that they had disposed of a portion of the goods under their agency, and had either remitted the proceeds thereof, or had sent to the vendor the accounts against the people who purchased from them. It was the duty of the commission house to keep strict account of all the goods, and it should have been entirely within their power to make complete and satisfactory proof as to every package and every pound which passed out of their possession. Failing in this, that company is properly chargeable with the full value of what they got. The appellants who participated in the sale to Martin, being the president and directors of the company, have no greater rights in the premises than what inured to the house itself.

We discover no errors in the record which require that the case should be reversed, and it will accordingly be affirmed.

*Affirmed.*